# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CR-130-LA-NJ |
| | ) | |
| v. | ) | |
| | ) | |
| PETER ARMBRUSTER, | ) | |
| MARK WOGSLAND, and | ) | |
| BRET NAGGS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPPOSITION BY THE UNITED STATES TO DEFENDANTS' MOTION FOR BILL OF PARTICULARS

The United States respectfully files this opposition to the Defendants' Motion for a Bill of Particulars (D.E. 85, 86). The Superseding Indictment (D.E. 48) contains a detailed and lengthy recitation of factual allegations that supports each of the elements of the charged offenses, including the three charged offenses that are the subject of the instant motion (Counts One, Ten, and Eighteen). Moreover, the government has already produced comprehensive and organized discovery that provides the defendants with a guide to the government's case, complete with indices that correspond to Bates numbers of the documents produced, a subset of "Indictment Documents," which relate to the charges and allegations in the Superseding Indictment, and interview memoranda with the documents used in the interview attached.

Nevertheless, the defendants have now requested a bill of particulars that would essentially require the government to provide the defendants with an exhaustive summary of its trial strategy and exhibits. The defendants now claim the government is required to provide, through a bill of particulars, a detailed listing of every "overt act," misstated account, and statement or action in furtherance of each of the conspiracies alleged in Counts One and Ten and the Bank Fraud charge

in Count Eighteen.  The defendants' sweeping request, through their retained counsel, for the government to catalogue each and every detail, statement, and act relating to the charged conspiracies is precisely the type of request that the Seventh Circuit, this Court, and courts around the country have rejected.

The government respectfully requests that the Court deny defendant's motion because (1) the Superseding Indictment standing alone unquestionably puts the defendants on notice of the charges against them, (2) the discovery the defendants have received and the format in which it was produced surely resolves any doubt as to whether the defendants have sufficient notice and information to adequately prepare for trial, and (3) this Court has squarely rejected requests like the defendants' and held that defendants cannot use a bill of particulars to require the government to identify the complete universe of evidence the government may seek to introduce at trial.  In support of this Opposition, the government submits as follows:

## I.    BACKGROUND

On June 12, 2018, a grand jury sitting in the Eastern District of Wisconsin returned an indictment charging former Roadrunner employees Bret Naggs and Mark Wogsland with Conspiracy to Make False Statements to a Public Company's Accountants and to Falsify the Books and Records of a Public Company (Count 1) (18 U.S.C. § 371); Conspiracy to Commit Securities and Wire Fraud (Count 2) (18 U.S.C. § 1349); Securities Fraud (Counts 3-5) (18 U.S.C. § 1348); and Wire Fraud (Counts 6-9) (18 U.S.C. § 1343).  The original indictment contained detailed allegations describing an accounting fraud scheme perpetrated by Naggs, Wogsland, and their co-conspirators from 2014 through at least January 2017.

### A.    The government produced well-organized discovery after indictment.

Shortly after Indictment, the government began producing discovery to Defendants Wogsland and Naggs, consistent with the District's Open File Policy.  As set forth below, the

government has provided extensive discovery with detailed cover letters and indices.  While each of the defendants' Motions complains about the volume of discovery in this case, there is not a single mention of the many steps the government has taken to provide discovery in an organized fashion that highlights key materials for the defendants.  Among the materials the government has produced to date (including after return of the Superseding Indictment) are:  (1) 93 interview reports and grand jury transcripts with accompanying exhibits of all non-law enforcement witnesses who have testified or been interviewed in connection with the government's investigation; (2) 207 key documents relating to specific counts and allegations in the indictment; (3) 1,676 "notable" documents identified by the government as of particular relevance to the investigation; and (4) 6,156 relevant documents identified by Roadrunner's counsel.  Collectively, these key materials identified by the government consist of 8,132 documents and 31,047 pages, or .34% of the overall volume of discovery.  In short, the government has produced discovery in a manner that not only allows the defendants to fully understand the nature of the charges against them, but also gives the defendants a substantial preview of the government's case—including key witness testimony and relevant documents likely to be used at trial.

The government's first discovery production included a hard drive containing load-ready and searchable files and an accompanying index.  In addition, the government's first production included a DVD containing the following key documents to assist in the Defendants' review of the discovery materials:

- Approximately 45 documents relating to specific allegations, counts, and overt acts in the Indictment;
- Approximately 1,676 documents identified as "notable," which are among the most relevant to the government's investigation;

- Approximately 5,834 documents identified by Roadrunner's company counsel as relevant to accounting issues relating to Roadrunner's restatement of financial results, and other areas relevant to the government's investigation.[1]

Since its initial production, the government has continued to produce additional load-ready documents to the defendants on a rolling basis, as they become available. With each production, the government has included an index listing the "producing party" or source of the documents, a brief description of the documents, and Bates ranges.

On July 11, 2018, the government produced the interview reports (FBI Form 302s and Department of Transportation Memoranda of Interviews) "in PDF format," as well as an index of the interview reports and "folders containing documents referenced in the interview reports."[2] As the government explained in its cover letter, "[t]he documents contained in these folders are largely duplicative of documents you have already received in discovery, however we are providing them here for ease of reference in your review of the interview reports." Since the initial production of interview reports, the government has continued to produce interview reports to the defendants on a rolling basis as they are completed using the same format—including with an accompanying folder containing all the cited documents—to expedite the defendants' review.

On September 27, 2018, the government continued its rolling productions and provided defendants Wogsland and Naggs with the following materials, in addition to load-ready files and interview reports:

- 17 "Interview Downloads," which the government explained were "notes of summaries of witness interviews conducted by counsel to Roadrunner in connection with Roadrunner's internal investigation." The government further explained that "these are

[1] Exhibit 1; July 3, 2018 Cover letter and index from DOJ to Wogsland (Production 1). Identical copies of the production were sent to counsel for Defendants Naggs and Wogsland. As set forth below, the government produced the same materials to defendant Armbruster after he was charged, in a largely identical format.

[2] Exhibit 2; July 11, 2018 Cover letter and index from DOJ to Wogsland (Production 3). Identical copies of the production were sent to counsel for Defendants Naggs and Wogsland.

not the notes of the attorneys who conducted the underlying interviews, but instead notes taken by the government based on conversations with counsel to Roadrunner and thus contain multiple layers of hearsay. In addition, these summaries are not verbatim transcripts of those conversations or of the interviews themselves."

- "Grand Jury Materials" containing grand jury testimony of six current and former Roadrunner employees, the only non-law enforcement witnesses who testified before the grand jury in this case, as well as a folder of corresponding exhibits.

- A set of electronic notes taken by a former Roadrunner employee that were collected by the government in the course of its investigation.[3]

In addition, with this production, the government provided a set of documents identified by Roadrunner's counsel and explained that this folder of documents would "supplement the 'relevant' documents produced on July 3, 2018 and [was] largely duplicative of documents previously provided in discovery."

Among the other relevant documents produced in discovery, the government has produced detailed records from Roadrunner's outside auditor, Deloitte & Touche ("Deloitte"), including files relating to Roadrunner's restatement. For example, the government produced spreadsheets prepared by Deloitte of restatement adjustments to contingent liabilities associated with earn-outs, which are directly relevant to the scheme charged in the Superseding Indictment.[4] The government has also produced Deloitte's workpapers from the restatement, detailing adjustments to certain accounts, as well as an analysis of what Roadrunner's earnings per share would have been with certain proposed restatement adjustments in particular quarters.[5]

---

[3] Exhibit 3; September 27, 2018 Cover letter and index from DOJ to Wogsland (Production 7). Identical copies of the production were sent to counsel for Defendants Naggs and Wogsland.

[4] DOJ-02824621

[5] DOJ-02824096– DOJ-02826159; DOJ-03549722; DOJ-03549723; DOJ-02932379

**B.    Following the Superseding Indictment, the government produced additional discovery.**

On April 2, 2019, a grand jury sitting in the Eastern District of Wisconsin returned a Superseding Indictment charging former Roadrunner Chief Financial Officer ("CFO") Peter Armbruster with participating in the fraudulent scheme and adding additional charges against Defendants Naggs and Wogsland. (D.E. 48). The Superseding Indictment included eighteen pages of factual allegations and charged the three defendants with Conspiracy to Make False Statements to a Public Company's Accountants and to Falsify the Books and Records of a Public Company (Count 1) (18 U.S.C. § 371); Acts to Fraudulently Influence Accountants (Counts 2-5) (17 C.F.R. § 240.13b2-2(b) & 15 U.S.C. § 78ff(a)); False Entries in a Public Company's Books, Records, and Accounts (Counts 6-9) (15 U.S.C. §§ 78m(b)(5), 78m(b)(2) & 78ff(a)); Conspiracy to Commit Securities and Wire Fraud (Count 10) (18 U.S.C. § 1349); Securities Fraud (Counts 11-13) (18 U.S.C. § 1348); and Wire Fraud (Counts 14-17) (18 U.S.C. § 1343). The Superseding Indictment also charged Defendant Armbruster with Bank Fraud (Count 18) (18 U.S.C. § 1344). Finally, the Superseding Indictment charged Defendant Wogsland with Securities Fraud (Count 19) (15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b5-2) for selling shares of Roadrunner stock in March 2015, while engaged in a scheme to defraud Roadrunner's shareholders and mislead its auditors about the true nature of Roadrunner's financial condition.

On April 11, 2019, the government began producing discovery to Armbruster. The government's first production included the majority of the materials previously provided to the other two defendants, including load-ready files and accompanying indices, interview memoranda with cited documents, grand jury transcripts of current and former Roadrunner employees with exhibits, notable documents identified by the government, and relevant documents identified by Roadrunner's counsel. In addition, the government produced to all three defendants an updated

set of 207 "Indictment Documents," including documents relating to specific allegations, counts, and overt acts in the Superseding Indictment.[6] That same date, the government also provided Naggs' new counsel with a complete index of all load-ready productions and an index of interview reports and grand jury materials to date to aid in their transition to the case.[7]

In March 2019, the government contacted Roadrunner's counsel to request that they provide relevant factual information conveyed to them during any interviews with Roadrunner employee Heather Hipke. On March 27, 2019, Roadrunner's counsel provided this information to the government over the phone. The government produced the "interview downloads" of the interviews with Heather Hipke on April 26, 2019.[8] The government subsequently requested that Roadrunner's counsel provide "interview downloads" for additional interviews conducted by Roadrunner's counsel so that the government could provide them to the defendants in discovery. In April 2019, after the Superseding Indictment was returned, the government had a call with Mr. Hedges, counsel to Mark Wogsland, in which Mr. Hedges expressed an interest in obtaining this additional information relating to interviews conducted by Roadrunner's counsel. The government explained to Mr. Hedges that the government had requested this information in order to produce it to the defendants in discovery. Between April and the end of June 2019, the government received 77 interview downloads from Roadrunner's counsel, and produced them to the defendants on April 26, 2019, June 10, 2019, and June 17, 2019.[9] These "interview downloads," which contain

---

[6] Exhibit 4; April 11, 2019 Cover letter and indices from DOJ to Armbruster (Production 1); Exhibit 5; April 12, 2019 Cover letter from DOJ to Wogsland (Production 14).

[7] Exhibit 6; April 12, 2019 Cover letter and indices from DOJ to Naggs (Production 14)

[8] Exhibit 7; April 26, 2019 Cover letter and index from DOJ to Armbruster (Production 3); Exhibit 8; April 26, 2019 Cover letter and index from DOJ to Wogsland (Production 15). Identical copies of the production were sent to counsel for Defendants Naggs and Wogsland.

[9] *See* Exhibit 8; April 26, 2019 Cover letter and index from DOJ to Wogsland (Production 15; Armbruster Production 3); Exhibit 9; June 10, 2019 Cover letter and indices from DOJ to

Roadrunner's counsel's recitation of relevant facts conveyed to them during an interview, contain three and sometimes four levels of hearsay, and as the government has repeatedly explained to all defendants, they are therefore not verbatim transcripts or complete reports of the underlying interviews, which the government did not conduct or attend. Nevertheless, the government endeavored to collect these additional "downloads" in an effort to be helpful and for the primary purpose of providing them to the defendants.

### C. The defendants request a bill of particulars seeking the government's trial strategy and evidence.

On October 14, 2019, the defendants requested, by letter, that the government provide a bill of particulars essentially requesting the government's trial strategy and listing all the government's evidence relating to Counts One, Ten, and Eighteen. Specifically, as to Count One, the defendants have requested that the government detail every co-conspirator, overt act, and act in furtherance of the conspiracy. D.E. 86-1 at 1. With respect to Counts Ten and Eighteen, the defendants not only request that the government list all co-conspirators, identify all overt acts (or confirm that the overt acts are limited to those specifically listed in the indictment), they also include additional requests that the government specifically identify the dates of particular conduct, identify particular misstated accounts, and identify all the operating companies that may be relevant to particular paragraphs of the Superseding Indictment. *Id.* at 4-6. Finally, the defendants also point to seven documents that the government provided along with its set of "Indictment Documents" that the defendants allege "do not appear to relate to any conduct

---

Wogsland (Production 17); Exhibit 10; June 17, 2019 Cover letter and index from DOJ to Wogsland (Production 18); Exhibit 11; November 4, 2019 Letter from DOJ to Wogsland (Production 24). Identical copies of the production were sent to counsel for Defendants Armbruster, Naggs and Wogsland. Among these "interview downloads" is a download of a February 22, 2017 interview of Mark Wogsland. At Mr. Hedges' request, the government delayed producing this to additional defendants until November 4, 2019.

specified in the Indictment." D.E. 86 at 5. The government has provided additional context for these documents, including citation to relevant paragraphs of the Superseding Indictment and original Indictment along with this Response.

## II. LEGAL STANDARD

Pursuant to the Rule 7 of the Federal Rules of Criminal Procedure, an indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. *See* Fed. R. Crim. P. 7(c)(1). As the Seventh Circuit has explained "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981). A defendant's "constitutional rights under the fifth and sixth amendments require that he be informed of the nature of the offense charged to allow him to prepare a defense and to protect his double jeopardy rights; they do not require the government to reveal the details of how it plans to prove its case." *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991). Thus, "[a] bill of particulars [is] unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense." *United States v. Blanchard,* 542 F.3d 1133, 1140 (7th Cir. 2008) (internal citation omitted). As this Court has explained, "[a] bill of particulars is required only where the charges in the indictment are so general that they do not advise the defendant of the specific act of which he is accused." *United States v. Musgrove*, 845 F. Supp. 2d 932, 942 (E.D. Wis. 2011).

In the Seventh Circuit, it is "well settled that a bill of particulars cannot be used to obtain a list of the government's witnesses, or evidentiary detail," *United States v. Johnson,* 504 F.2d 622, 628 (7th Cir. 1974)*,* which is precisely what the defendants seek to do with this Motion. Moreover, "a bill of particulars is not required when the information a defendant needs to prepare his defense is available through some other satisfactory form, such as discovery." *United States*

*v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003) (internal quotation marks omitted). The Seventh Circuit has explicitly directed that "it is proper to look to post-indictment discovery when considering whether a bill of particulars is required," and to determine whether such materials provide "sufficient information concerning the charges." *Glecier*, 923 F.2d at 502. As numerous Circuits have concluded, "[g]eneralized discovery, however, is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *Glecier,* 923 F.2d 496, 501–02 (7th Cir.1991) (The Constitution does "not require the government to reveal the details of how it plans to prove its case."); *see also United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (internal citations omitted) ("A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation."). "To allow the bill of particulars to serve as a wholesale discovery device would actually frustrate the federal discovery rule." *Anderson*, 799 F.2d at 1442.

Where, as here, the government has followed an "open-file" discovery policy, a bill of particulars is particularly inappropriate because the discovery has "provided the defendants with complete and open discovery of all evidence assembled and revealed in the government's investigation." *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991). Thus, as the Seventh Circuit has repeatedly held, "[t]he and operations of the "open-file" policy is an adequate "satisfactory form" of information retrieval, making the bill of particulars unnecessary." *Id.*; *see also United States v. Esteves*, 886 F. Supp. 645, 647 (N.D. Ill. 1995) (same); *United States v. Ludke*, No. 16-CR-175, 2017 WL 9772960, at *7 (E.D. Wis. Dec. 11, 2017), *report and recommendation adopted*, No. 16-CR-175, 2018 WL 2059556 (E.D. Wis. May 2, 2018) ("The

Seventh Circuit has held that the government's "open file" policy is a "satisfactory form" of information retrieval, making a bill of particulars unnecessary.").

## III. ARGUMENT

Here, the defendants acknowledge that the Superseding Indictment satisfies the requirement that an indictment "set[s] forth the elements of the offense[s] charged," however they maintain that the Superseding Indictment and discovery do not sufficiently apprise the defendants of the charges to enable them to prepare for trial. This argument is without merit.

First, there can be little doubt that the thirty-six page Superseding Indictment is more than sufficient. The Superseding Indictment lays out in great detail the elements of each offense and the factual allegations supporting those elements. Second, as set forth above, the government has not merely followed the open-file policy in the District, it has provided the defendants with what is essentially a roadmap of its key evidence. The defendants repeatedly complain about the "voluminous discovery," but fail to acknowledge that this is not a case where the government has simply provided the defense with a massive set of documents. To the contrary, the government has identified relevant documents identified by the government and identified by Roadrunner's counsel, which, collectively, consist of 8,039 documents and 29,880 pages, or .33% of the overall volume of discovery about which the defendants repeatedly complain. The government has also produced load-ready and searchable documents with accompanying indices, which allow the defendants to easily sort and identify relevant information, as well as interview memoranda and the documents referenced in the memoranda. Thus, the discovery in this case exceeds the required "open-file" discovery and is more than sufficient to alert the defendants to the nature of the charges against them and to prepare for trial. The defendants' request for even more information is simply a request for the government's witnesses, exhibits, and trial strategy, which the Seventh Circuit has squarely deemed as an improper use for a bill of particulars. *See Johnson,* 504 F.2d at 628.

To date, in their review of the discovery, the defendants have identified approximately *seven* documents out of 2,427,868 that that they allege they cannot "link" to the Superseding Indictment. The government addresses those specific documents below and, as the government has repeatedly told the defendants, in the event they have questions about particular documents or how to identify certain items, the government remains willing to assist. However, the government is not required to provide the defense with a complete inventory of its trial evidence. Rather than asking particular questions, the defendants are, instead, asking this Court to sanction a fishing expedition and ordering the government to provide what would essentially be a blueprint of the government's trial strategy, witness list, and exhibit list before a trial date is even set in this matter. The government has alleged a fraud scheme that was perpetrated by the defendants and their co-workers over a nearly four-year period. Requiring the government to list every single act—every phone call, every email, every accounting decision—that the defendants took in furtherance of the scheme would be unreasonable and is not required. The Court should reject the defendants' novel request, as it is not supported by the law of this Court or the facts of this case.

A.   **The defendants are not entitled to a listing of every act, specific account, and other piece of evidence relevant to Counts One, Ten, and Eighteen.**

With respect to Counts One and Ten, the defendants seek the specific dates of every single act in furtherance of the charged conspiracies, D.E. 86-1 at 5, 6, but that is not what the law requires. As this Court has explained, in charging a conspiracy, an indictment "need only allege" the conspiracy, "the time frame in which it allegedly was operated, and the statute violated." *United States v. Turner*, No. 18-CR-142, 2019 WL 2774143, at *5 (E.D. Wis. July 2, 2019) (internal quotation marks omitted). The government is "not required to identify all overt acts in furtherance of [a] conspiracy," in an indictment. *United States v. Kelley*, 120 F.R.D. 103, 107–08 (E.D. Wis. 1988). Here, the Superseding Indictment does far more than that—it provides

specificity as to the dates of the conspiracies and fourteen pages describing the scheme. While the defendants would certainly prefer an exhaustive listing of every piece of evidence the government may present at trial, "[a] bill of particulars is a tool used not for the sake of simplicity or efficiency, but for the purpose of informing a defendant when he lacks the central facts which will enable him to conduct his own investigation of the transactions giving rise to the charge." *United States v. Carman*, No. 02 CR 464-1, 2004 WL 1699019, at \*2 (N.D. Ill. July 27, 2004).

Consistent with this principle, courts routinely reject claims for a bill of particulars where a detailed indictment and/or discovery provide the defendant with sufficient notice of the charges against him, even in complex accounting fraud cases. The Eighth Circuit's recent decision in *United States v. Lundstrom*, 880 F.3d 423 (8th Cir. 2018), is directly on point. In *Lundstrom*, the Eighth Circuit affirmed the lower court's denial of a bill of particulars, where a detailed indictment and extensive discovery had been provided in a complex securities fraud case. The defendant had argued before the district court that a bill of particulars was required, in part, because the superseding indictment alleged that false statements were made in a shareholder meeting without identifying the specific false statements. See Def. Lundstrom's Memo. in Support of a Bill of Particulars, *United States v. Lundstrom*, 4:14-cr-03136-JMG-CRZ, DE 69 at 3 (D. Neb. Sept. 15, 2015). In affirming the district court's denial of the defendant's motion for a bill of particulars, the Eighth Circuit noted that the government had provided the defendant with:

> [A] searchable electronic database of discovery documents, a Bates-stamped index of database materials, a lengthy index of paper documents, an index of exhibits labeled during an earlier SEC enforcement proceeding, and copies of depositions of former TierOne employees and outside accountants taken during the SEC proceedings. The magistrate judge further noted that the government had disclosed a list of 400 "hot documents," which represented the materials most relevant to the government's case. The government also identified the key documents that corresponded to each count of the indictment.

Id. at *22. The Eighth Circuit held that this discovery was "sufficient to enable [the defendant] to understand the nature of the charges against him, prepare a defense, and avoid any surprise." *Id.* *See also United States v. Machado*, 986 F. Supp. 2d 288, 293 (S.D.N.Y. 2013) (denying a bill of particulars that requested the government identify every transaction in which each defendant was alleged to have participated as part of a conspiracy to distribute cocaine); *United States v. Daniels*, 95 F. Supp. 2d 1160, 1166 (D. Kan. 2000) (denying a bill of particulars in a healthcare fraud case as an impermissible attempt at discovery that sought "which procedures were medically unnecessary, what patients did not give informed consent, and the specific words that are allegedly false and misleading"); *United States v. Levy*, No. S5-11-Cr.-62(PAC), 2013 WL 664712 at *13 (S.D.N.Y Feb. 25, 2013) (denying a bill of particulars seeking each untrue statement and omission underlying a securities fraud charge, ruling that the "request for a recounting of each specific misrepresentation and omission alleged is simply a request to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars" (internal quotation marks and citations omitted)), *aff'd*, 803 F. 3d 120 and 626 Fed. App'x 319 (2d Cir. 2015).

### B. The defendants' specific requests as to each count are unsupported.

The defendants' first requests pertain to Count One, which alleges a Conspiracy to Make False Statements to a Public Company's Accountants and to Falsify the Books and Records of a Public Company. The defendants concede that "Counts Two through Nine track the substance of the nine separate overt acts alleged in Count One," but ask that the government either confirm that these are the *only* overt acts in furtherance or, alternatively, provide a list "specifying which "other" overt acts are alleged to be committed by Defendants in furtherance of the conspiracy, identifying the date(s) and description(s) of such "other" acts." D.E. 86-1 at 1. The two objects of the Count One conspiracy are to (1) falsify Roadrunner's books and records; and (2) make false

statements to conceal the scheme from Deloitte.  The Superseding Indictment provides substantial detail as to how the defendants achieved both of these objects.

Paragraphs 26 through 29 of the Superseding Indictment lay out an overview of the scheme that describes the manner and means by which the defendants and their co-conspirators manipulated accounts and, in order to conceal the scheme, misled Roadrunner's auditors. Paragraphs 30 through 60 describe, in particular detail, the precise way in which the defendants carried out the scheme to defraud, including specific instances of account manipulation.  And, paragraphs 61 through 69 describe in detail the ways in which the defendants and their co-conspirators "concealed the fraudulent scheme" from Deloitte and paragraphs 79 through 87 provide a list of overt acts in furtherance of Count One.  Specifically, the Superseding Indictment alleges that:

- Armbruster "signed Management Representation Letters to Accounting Firm A throughout the scheme, from approximately 2013 through the Third Quarter of 2016."  In addition to falsely certifying that Roadrunner's financial statements and financial information was "presented in conformity with" relevant accounting principles, among other things, **ARMBRUSTER** falsely certified that "no events have occurred subsequent to the balance-sheet date and through the date of this letter that would require adjustment to or disclosure in the aforementioned financial information."  Superseding Indictment, ¶¶ 62, 63, 86, 87.

- On or about February 25, 2015, May 4, 2015, and August 3, 2015, **NAGGS** also falsely certified that all transactions were properly recorded in accordance with the relevant accounting rules and that he was not aware of "any misstatements."  *Id.*  ¶¶ 64, 82.

- On or about February 5, 2015, **WOGSLAND** falsely told Accounting Firm A that he was not "aware of any inappropriate journal entry or other adjustment in the entity's financial records."  Between in or around November 2014 and February 2015, and again in September 2015, **WOGSLAND** falsely told Accounting Firm A that he did not know of any fraudulent, suspected fraudulent, or unusual items, or any unusual entries.  *Id.*  ¶ 65, 83.

In addition, these paragraphs set out, often quoting or citing to particular emails that have been provided to the defendants, the manner in which Armbruster, Wogsland, and Naggs concealed the accounting manipulation from Deloitte on a regular basis. In addition, as the defendants concede, "sixteen of the Indictment's nineteen counts are charged with specificity, detailing the conduct at issue, specifying dates, who allegedly participated in the conduct, and the alleged accounting errors." D.E. 86 at 3. With respect to Count One, the defendants can hardly argue that the eighteen paragraphs of specific allegations, coupled with 8 substantive counts and the general descriptions in the Superseding Indictment, do not provide them with adequate notice to allow them to prepare for trial. Again, asking the government to identify every facet of the scheme is tantamount to asking the government to identify every fact it intends to provide at trial and how the government plans to do so. This is not the proper purpose for a bill of particulars.

With respect to Count Ten, which alleges a Conspiracy to Commit Wire and Securities Fraud, the defendants again ask that the government either state that the overt acts are limited to the substantive wire and securities fraud counts or the "acts specifically detailed in ¶¶ 25 through 74," D.E. 86-1 at 2, or, alternatively, that the government identify "each co-conspirator known to the Government;" the specific dates of conduct; particular operating companies; and all other "allegedly misstated accounts." *Id.* at 2-3. Here, again, the defendants' claims fail because Paragraphs 30 through 60 of the Superseding Indictment contain a detailed description of the scheme. Courts have repeatedly found that the government's use of "examples" or "types" of misrepresentations in an indictment places the defendant on notice of the charges against him, such that a bill of particulars is not appropriate. *See United States v. Holzendorf*, 576 Fed. App'x at 936; *United States v. Batiste*, No. 06-cr-20373, 2007 WL 9653090 at *1-2 (S.D. Fla. Sept. 6, 2007); *United States v. Wey*, No. 15-cr-611, 2017 WL 237651 at *19 (S.D.N.Y. Jan. 18, 2017) (denying

defendant's bill of particulars request for the government to identify each trade allegedly manipulated in a "pump-and-dump" securities fraud case where government provided types of actions defendant took and specific examples of such actions).

In the face of the well-settled rule that the government need not identify each and every piece of evidence, overt act, and misstated account in advance of a fraud trial, the defendants point to *United States v. Wen,* 2005 U.S. Dist. LEXIS 19531 (E.D. Wis. 2005). However, this case bears little resemblance to the facts here. As this Court has more recently concluded in rejecting a motion for a bill of particulars, *Wen* involved a "conspiracy to violate export restrictions, with failing to obtain export licenses and making false representations about the value of exported shipments, among other offenses," and the Court concluded the indictment was "unclear" as to the nature of certain terms and there were problems with the discovery "relating to the parts numbers." *United States v. Balsiger*, No. 07-CR-57, 2014 WL 10320061, at *5 (E.D. Wis. Feb. 27, 2014), *report and recommendation adopted,* No. 07-CR-57, 2015 WL 4623511 (E.D. Wis. Aug. 3, 2015). Yet, in *Balsiger* as here, "although the discovery materials are voluminous, there is no indication that these materials are confusing to the extent found in *Wen." Id.* There is no legitimate suggestion that the Superseding Indictment is "unclear" as to some particular term or account, nor have the defendants alleged as much. In addition, the defendants are former finance executives at Roadrunner who are intimately familiar with the accounting and finance issues relevant to this case and even the particular misstated accounts at issue. The defendants authored and reviewed many of the documents at issue in this case and cannot claim to be unfamiliar with or confused by the terminology in the Superseding Indictment.

In addition, the Superseding Indictment lists particular accounts and accounting manipulation that are examples of how the scheme was carried out, and the key documents

provided in discovery, including, for example, Deloitte's files listing which accounts the Company restated, give the defendants a key to understanding which accounts were misstated and how. Any "arguable need for a bill of particulars has been obviated where, as here," the government has followed the "open file" policy and "the defendants have been provided with access to discoverable information in the government's file." *See United States v. Balsiger*, 644 F. Supp. 2d 1101, 1113 (E.D. Wis. 2009).

Finally, defendant Armbruster, the only individual named in the Bank Fraud charge in Count Eighteen, similarly asks the government to identify all co-conspirators, particular accounts, and overt acts taken in furtherance of the scheme to defraud Roadrunner's primary lender, Bank A. As alleged in the Superseding Indictment, the nature of the bank fraud scheme was that, in addition to misstating accounts and manipulating Roadrunner's financial results:

> **ARMBRUSTER** and his co-conspirators also misled Bank A and Roadrunner's other lenders about Roadrunner's financial condition. Beginning at least as early as 2013 and continuing through the Third Quarter of 2016, **ARMBRUSTER** signed compliance certificates, falsely attesting to Bank A that Roadrunner's "data and computations are true, complete and correct." In reality, however, as **ARMBRUSTER** knew, Roadrunner's financial results were misstated and did not accurately reflect millions of dollars in misstated accounts, delayed expenses, and selectively manipulated contingent earnout liabilities.

Superseding Indictment, ¶ 70. Put differently, Armbruster is alleged to have committed bank fraud by lying to Bank A about Roadrunner's financial condition while he was directly involved in fraudulently inflating Roadrunner's financial performance. In addition, among other materials provided in discovery, Armbruster has access to all of the certifications that he regularly signed at the end of each quarter, attesting to Roadrunner's compliance with its bank covenants. Because the government has adequately charged Armbruster with Bank Fraud and provided discovery laying out its theory as to how he committed that offense, a bill of particulars would improperly force the government to "make a detailed disclosure of its evidence or to reveal the theory of its

case." *Balsiger,* 644 F. Supp. 2d at 1112.  In sum, the Superseding Indictment and discovery more than adequately place Armbruster on notice of the bank fraud charge.  The government is not required to preview all of its evidence for the defense.

      **C.**     **The defendants are not entitled to a detailed listing of all co-conspirators.**

Despite the extensive detail in the Superseding Indictment, the defendants claim that the conspiracy counts "do not apprise Defendants of the 'central facts' of the charges" against them apparently because the conspiracy counts "do not reveal the identities of unindicted co-conspirators."  D.E. 86 at 7.[10]  However, Courts have routinely rejected sweeping requests in conspiracy cases for the government to identify all co-conspirators, overt acts, and statements in furtherance of a conspiracy.  *See Glecier,* 923 F.2d at 502 (concluding in racketeering case, "[an] indictment, which sets forth the time period, the enterprise, the locations, the names of the primary actors, and the methods, means and nature of the racketeering activity," rendered a bill of particulars unnecessary); *United States v. Caputo,* 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (concluding "identification of all co-conspirators" is not "necessary for Defendants to prepare for trial").

The defendants cite *Ludke,* No. 16-CR-175, 2017 WL 9772960, at *7 (E.D. Wis. Dec. 11, 2017), a terrorism case where the discovery involved "(mostly from social media) between Ludke and other individuals, those communications consist of approximately 24,000 pages of communications between Ludke and hundreds of people," and thus provided limited insight into who the defendant's purported co-conspirators might be.  Here, in contrast, the Superseding

---

[10] The defendants have filed a separate Motion for a *Santiago* Proffer from the Government, which seeks early disclosure of much of the same information.  D.E. 80.  The government will respond separately responded to that Motion, as there is no basis for a *Santiago* proffer or early disclosure of co-conspirators or co-conspirators' statements in this case.

Indictment alleges a scheme to defraud Roadrunner's shareholders, auditors, regulators, and lenders. As the allegations in the Superseding Indictment make clear, the defendants' co-conspirators include other Roadrunner employees; it is not, as the defendants allege, a "boundless" universe of hundreds of potential co-conspirators. Moreover, the Superseding Indictment includes references to particular email exchanges among the defendants and other Roadrunner employees, all of which provide the defendants with ample notice of the nature of the scheme alleged by the government and the identities of the co-conspirators. While the Superseding Indictment does not detail every particular act in furtherance of the conspiracy or identify each co-conspirator by name, that is not what Rule 7 or Seventh Circuit precedent requires. Rather, the Superseding Indictment readily satisfies the Rule 7 standard because it provides the defendants notice of "the names of the primary actors, and the methods, means and nature of" the scheme. *See Glecier*, 923 F.2d at 502.

## IV.     THE "INDICTMENT DOCUMENTS"

Following return of the Superseding Indictment, the government produced a set of 207 "Indictment Documents" relating to the charges and allegations in the Superseding Indictment. The defendants allege in their Motion that seven of these 207 documents "do not appear to relate to any conduct specified in the Indictment." D.E. 86 at 5. While the government believes that the relevance of the documents listed below is clear on their face, the government has nevertheless provided additional context for each of the documents listed below to assist the defendants in preparing for trial.

1.     **DOJ-00032790-91: February 16, 2016 Email from Sarah Bergmann to Mark Wogsland, Connor Kursel, cc Bret Naggs, re: "FW:  IC loans."**  *See* Superseding Indictment, ¶ 38 ("By early 2015, **ARMBRUSTER**, **WOGSLAND**, **NAGGS**, and their co-conspirators developed a plan to write off approximately $2 million of the misstated accounts.  However, instead of immediately writing off the full amount, **ARMBRUSTER**, **NAGGS**, and others

directed RRIS to adjust the balance sheet incrementally, by a small amount each month, in order to conceal the nature and extent of the misstated accounts."); *Id.* at ¶ 39 ("On or about February 13, 2015, after **ARMBRUSTER** and his co-conspirators determined that poor financial performance at other operating companies needed "to be mitigated," **ARMBRUSTER** directed **NAGGS** that RRIS should not book the planned write-off for February and to reverse any incremental write-off recorded in January."). *See also* Indictment, D.E. 1, ¶ 41 ("However, in February 2015, after Roadrunner management determined that poor financial performance at other operating companies 'needed to be mitigated,' **NAGGS** directed RRTS not to take the planned write-off for February and to manually reverse the write-offs it had already taken in 2015.").

3. **DOJ-00050578: July 11, 2013 email from Judy Vijums to Peter Armbruster and Brock Even re: "FMV Adjustments."** *See* Superseding Indictment, ¶ 53 ("For example, in or around July 11, 2013, Individual 1 emailed **ARMBRUSTER** that "if we need a little more cushion" for the Second Quarter 2013, they could reduce contingent earnout liabilities and "use the additional $$ to book insurance or medical, wherever we may be short." Individual 1 also told **ARMBRUSTER** to leave enough "cushion" because "at year end we may need to reverse another chunk to cover some of our year end catch ups."); *see generally id.* ¶¶ 49-55 (describing earnout scheme).

4. **DOJ-00086286: July 22, 2015 email from Susan French to Mark Wogsland re: "RRTS & RTLLC Interco Recon."** *See* Indictment, ¶ 66 ("On or about July 21, 2015, **WOGSLAND** emailed two Roadrunner employees regarding the financial statements of an operating company, directing one of them, in the future, to 'not include [Roadrunner's Internal Audit Manager, Elton Demeti] on an email like this. He is an auditor.'"); Superseding Indictment,

¶¶ 66-68 (describing efforts by Wogsland, Naggs, and Armbruster to deliberately conceal the scheme).

5.　　**DOJ-00458368:　October 17, 2016 email from Chris Lacey to Peter Armbruster and Ben Kirkland, re: "Terminal Results," attaching spreadsheet "TALLM – MSI Income Statement – Month By Terminal."**　*See* Superseding Indictment, ¶ 57 ("[O]n or about October 17, 2016, after learning that Roadrunner was "$7.587 million short of the covenant requirement" for the Third Quarter of 2016, **ARMBRUSTER** proposed adjustments, including reversing a $756,000 accrual for annual bonuses at one Roadrunner operating company *and reversing a $400,000 bad-debt expense from fraudulent customer receivables at RRIS, both of which,* **ARMBRUSTER** *acknowledged, "would need to be reversed in q4 2016."*) (emphasis added); *id.* ¶ 59 ("On or about October 21, 2016, **ARMBRUSTER** directed RRIS to "defer" $400,000 in bad-debt expenses from August and September until December."); *see also* DOJ-00043584; DOJ-00086381, DOJ-00088711; DOJ-00142801; DOJ-00458368; DOJ-00261692; DOJ-00148112; DOJ-00240211; DOJ-00025835; and DOJ-00425077 (correspondence relating to Armbruster directing pushing $400,000 bad-debt expense from 3Q 2016 into 4Q 2016).

6.　　**DOJ-01654239: April 24, 2014 Deloitte Online email to Jimmy Pate (Deloitte) re: "Roadrunner 2013 Audit eRoom report, 24 Apr 14.";** DOJ-01842049: **April 24, 2014 Deloitte Online email to Bill Haupt (Deloitte) re: "Roadrunner 2013 Audit eRoom report, 24 Apr 14."** *See* Indictment, ¶ 59 ("On or about April 24, 2014, **WOGSLAND** sent Accounting Firm A the bad debt reserve calculations for RRIS, falsely showing that RRIS was over reserved."); *id.* ¶¶57-58 (describing Wogsland's internal bad debt reserve analysis, which he did not share with the auditors); *see generally* Superseding Indictment, ¶¶ 61-69 (describing efforts by Wogsland, Armbruster, and Naggs to conceal misstated accounts from Roadrunner's auditors).

## V.     CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendants' Motion for a Bill of Particulars should be denied.


Date:  November 18, 2019

Respectfully submitted,

ROBERT ZINK
Chief, Fraud Section
U.S. Department of Justice

By: */s/ Caitlin R. Cottingham*
HENRY P. VAN DYCK
Deputy Chief
CAITLIN R. COTTINGHAM
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I, Caitlin R. Cottingham, certify that the foregoing has been served on all attorneys of record in the above-captioned case, either via the CM/ECF electronic filing system or via email.

By: */s/ Caitlin R. Cottingham*
CAITLIN R. COTTINGHAM
Assistant Chief, Fraud Section
U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Telephone: (202) 616-5575

Date: November 18, 2019