# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 18-CR-130-LA-NJ |
| ) | |
| v. ) | |
| ) | |
| PETER ARMBRUSTER, ) | |
| MARK WOGSLAND, and ) | |
| BRET NAGGS, ) | |
| ) | |
| Defendants. ) | |

## OPPOSITION BY THE UNITED STATES TO DEFENDANTS' MOTION FOR *SANTIAGO* PROFFER

The United States respectfully files this opposition to the Defendants' Motion for a *Santiago* Proffer (D.E. 80). This is not, as the defendants claim, a case where the government has inundated them with irrelevant discovery. To the contrary, as set forth below and more completely in the government's response to the Defendants' Motion for a Bill of Particulars filed today, D.E. 100, the government has provided the defendants with organized and thorough pretrial discovery that, when read along with the detailed thirty-six page Superseding Indictment, provides the defendants with ample notice of the charges against them. The defendants' complaints about the volume of discovery miss the point and entirely ignore the government's efforts to provide them with a roadmap of its evidence, including a subset of documents relating directly to the charges and allegations in the Superseding Indictment, and relevant documents identified by the government and Roadrunner's counsel. Collectively, these key materials consist of 8,132 documents and 31,047 pages, or .34% of the overall volume of discovery.

It is the "long-standing practice in this District to conditionally admit statements of alleged co-conspirators subject to the government showing that the statements are admissible" as co-

conspirator statements. *See United States v. Lewis*, No. 17-CR-191, 2018 WL 3601237, at *3 (E.D. Wis. July 27, 2018). There is no basis for this Court to vary from its standard practice here by requiring the government to provide a full *Santiago* proffer in advance of trial. This request, like the defendants' request for a bill of particulars, is merely an effort to force the government to provide a detailed trial strategy and witness and exhibits before this matter is even set for trial. Such a request is not supported by the law of this Circuit or warranted by any particular facts of this case. In support of this Opposition, the government submits as follows.

## I. BACKGROUND

Roadrunner Transportation Systems, Inc., ("Roadrunner" or the "Company") is a publicly-traded trucking and logistics company currently based in Downers Grove, Illinois. Superseding Indictment, ¶ 1. Defendant Peter Armbruster was the Chief Financial Officer ("CFO") of Roadrunner from approximately 2010 through April 2017. *Id.*, ¶ 7. Defendant Mark Wogsland worked at Roadrunner from approximately 2010 through December 2017, and held various senior roles in Roadrunner's finance and accounting departments during his tenure at the Company, including controller of Roadrunner's Truckload business segment. *Id.*, ¶ 8. Defendant Bret Naggs worked at Roadrunner from approximately July 2014 through October 2015 and held the role of controller of Roadrunner's Truckload business segment. *Id.*, ¶ 9. Armbruster, Wogsland, and Naggs were all licensed Certified Public Accountants. *Id.*, ¶¶ 7, 8, 9. As CFO and senior members of Roadrunner's finance team, defendants Armbruster, Wogsland, and Naggs, were responsible for overseeing Roadrunner's financial results and ensuring that they were accurate. *Id.* Armbruster, Wogsland, and Naggs were also responsible for providing Roadrunner's outside auditors with accurate and truthful information about Roadrunner's financial condition and accounts in connection audits of Roadrunner's financial statements. *Id.* ¶¶ 61-69.

2

As alleged in the Superseding Indictment, between 2013 and 2017, Armbruster, Wogsland, Naggs, and their co-conspirators engaged in an accounting fraud scheme to deceive Roadrunner's independent auditors, lenders, and regulators by making and causing others to make false and fraudulent statements about Roadrunner's financial condition. *Id.* ¶ 25. Armbruster, Wogsland, and Naggs used a variety of methods to accomplish this scheme, including intentionally overstating certain accounts containing uncollectible debts and other assets with little to no value, improperly pushing expenses to subsequent time periods, and selectively manipulating accounts to create and later use a "cushion" of funds that could be used to fraudulently inflate Roadrunner's financial performance. *Id.* ¶¶ 26-28.

In late 2016, the defendants' scheme began to unravel when new Roadrunner finance employees and executives learned about historic, misstated accounts at one of Roadrunner's operating units. *Id.* ¶¶ 44-48. Shortly thereafter, Roadrunner launched an internal investigation. In January 2017, Roadrunner announced for the first time that investors could no longer rely upon Roadrunner's previous financial results and that the Company would be restating its financial statements. *Id.*, ¶ 73. In the day days following this announcement, Roadrunner's share price dropped precipitously, causing a loss in shareholder value of more than $138 million.

The government launched a criminal investigation into the accounting irregularities at Roadrunner in January 2017. On June 12 2018, a grand jury sitting in the Eastern District of Wisconsin returned an indictment charging former Roadrunner employees Bret Naggs and Mark Wogsland with Conspiracy to Make False Statements to a Public Company's Accountants and to Falsify the Books and Records of a Public Company (Count 1) (18 U.S.C. § 371); Conspiracy to Commit Securities and Wire Fraud (Count 2) (18 U.S.C. § 1349); Securities Fraud (Counts 3-5) (18 U.S.C. § 1348); and Wire Fraud (Counts 6-9) (18 U.S.C. § 1343). The original indictment

3

contains detailed allegations describing an accounting fraud scheme perpetrated by Naggs, Wogsland, and their co-conspirators from 2014 through at least January 2017.

On April 2, 2019, a grand jury sitting in the Eastern District of Wisconsin returned a Superseding Indictment charging Armbruster with participating in the fraudulent scheme and adding additional charges against Defendants Naggs and Mark Wogsland. (D.E. 48). The Superseding Indictment included eighteen pages of factual allegations and charged the three defendants with Conspiracy to Make False Statements to a Public Company's Accountants and to Falsify the Books and Records of a Public Company (Count 1) (18 U.S.C. § 371); Acts to Fraudulently Influence Accountants (Counts 2-5) (17 C.F.R. § 240.13b2-2(b) & 15 U.S.C. § 78ff(a)); False Entries in a Public Company's Books, Records, and Accounts (Counts 6-9) (15 U.S.C. §§ 78m(b)(5), 78m(b)(2) & 78ff(a)); Conspiracy to Commit Securities and Wire Fraud (Count 10) (18 U.S.C. § 1349); Securities Fraud (Counts 11-13) (18 U.S.C. § 1348); and Wire Fraud (Counts 14-17) (18 U.S.C. § 1343). The Superseding Indictment also charged Defendant Armbruster with Bank Fraud (Count 18) (18 U.S.C. § 1344). Finally, the Superseding Indictment charged Defendant Wogsland with Securities Fraud (Count 19) (15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b5-2) for selling shares of Roadrunner stock in March 2015, while engaged in a scheme to defraud Roadrunner's shareholders and auditors about the true nature of Roadrunner's financial condition.

Following the return of the original indictment in June 2018, the government indicated it would be following the District's "open-file" policy and thereafter produced extensive and well-organized discovery. The government has set out a detailed description of its discovery practices in this case in response to the Defendants' Motion for a Bill of Particulars (D.E. 85), which it incorporates by reference and will not repeat in full here. Among the materials the government

has produced to date (including after return of the Superseding Indictment) are (1) 93 interview reports and grand jury transcripts with accompanying exhibits of all non-law enforcement witnesses who have testified or been interviewed in connection with the government's investigation; (2) 207 key documents relating to specific counts and allegations in the indictment; (3) 1,676 "notable" documents identified by the government as of particular relevance to the investigation; and (4) 6,156 relevant documents identified by Roadrunner's counsel. Collectively, these key materials identified by the government consist of 8,132 documents and 31,047 pages, or .34% of the overall volume of discovery. The government also produced load-ready and searchable files from a variety of sources, along with indices identifying the sources of the documents and interview memoranda with cited documents. Following the return of the Superseding Indictment in April 2019, the government produced an additional subset of documents relating to specific allegations in the Superseding Indictment.

The defendants filed pretrial motions, including a Motion for a Bill of Particulars and a Motion for *Santiago* proffer on October 18, 2019. A trial date in this case has not yet been set.

## II. LEGAL STANDARD

It is well-established that a trial court may admit hearsay statements into evidence under the co-conspirator exception to the hearsay rule, Rule 801(d)(2)(E), if the court finds by a preponderance of the evidence that (1) the conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy. *United States v. Van Daal Wyk*, 840 F.2d 494, 496 (7th Cir. 1988); *United States v. Santiago*, 582 F.2d 1128, 1130 (7th Cir. 1978).

The Seventh Circuit has "approved various procedures that a trial court may employ in order to make the preliminary determination required by *Santiago*." *United States v. Arms*, No. 14-CR-78, 2015 WL 3513991, at *17 (E.D. Wis. June 3, 2015), *report and recommendation*

*adopted*, No. 14-CR-78, 2015 WL 5022640 (E.D. Wis. Aug. 24, 2015). The Seventh Circuit "discourages the use of a "full blown" hearing as a means to make this determination as "inefficient and potentially duplicative." *Id.* (citing *United States v. Andrus,* 775 F.2d 825, 836–37 (7th Cir.1985)). Consistent with that guidance, this Court typically "does not require the government to file *Santiago* proffers in advance of the trial." *United States v. Davis*, No. 06-CR-215, 2007 WL 4207536, at *8 (E.D. Wis. Nov. 26, 2007). Rather, "[i]t is long-standing practice in this District to conditionally admit statements of alleged co-conspirators subject to the government showing that the statements are admissible in accordance with the *Santiago* factors." *United States v. Lewis*, No. 17-CR-191, 2018 WL 3601237, at *3 (E.D. Wis. July 27, 2018); *United States v. Urbina*, No. 06-CR-336, 2007 WL 2220205, at *3 (E.D. Wis. July 31, 2007) ("It is the standard practice in this district to not resolve issues regarding the admissibility of coconspirator statements in the pretrial stage."). This rule applies "even in exceptionally complex cases." *Arms*, No. 14-CR-78, 2015 WL 3513991, at *17 (E.D. Wis. June 3, 2015) (collecting cases).

### III.  ARGUMENT

The defendants concede that this Court's "normal practice" is not to require a *Santiago* proffer or a pretrial hearing, but rather to conditionally admit co-conspirators statements "even in the absence of a pretrial proffer." D.E. 80 at 5 (citing *Arms*, No. 14-CR-78, 2015 WL 5022640, at *9-10). Nevertheless, the defendants argue that an exception is appropriate here because "this is far from a typical case," largely because it involves a substantial volume of discovery. D.E. 80 at 2. As explained herein, the total volume of discovery is virtually irrelevant because the manner in which the government has produced discovery has provided the defendants with more than sufficient information and guidance about the government's case. An exception to this Court's general practice is not warranted and a *Santiago* proffer is not necessary or appropriate in this case.

6

At the outset, the defendants are *not* requesting a "full blown" *Santiago* hearing, but instead are asking the government to provide a full catalog of (1) the names of all co-conspirators; and (2) all "statements the government intends to offer as coconspirator statements." D.E. 80 at 7. The defendants are not making this request to assess the pretrial admissibility of co-conspirator statements, but rather to "aid in focusing their litigation positions, to make trial more efficient, and to minimize the risk of a costly mistrial." D.E. 80 at 7. The purpose of the *Santiago* proffer—in the rare circumstances in which it is required—is to allow the Court to evaluate the admissibility of the statements and to "make the preliminary determination required by *Santiago*," not to provide the defense with a tactical advantage of having the government's evidence listed and categorized so they can prepare for trial. Put simply, the defendants' Motion for a *Santigo* Proffer is yet another attempt to gain access to the government's trial strategy and to obtain an unwarranted preview of how the government intends to prove its case. As such, the defendants' Motion should be denied.

In addition, the government has provided detailed, well-organized, and comprehensive discovery, as set forth above. Defendants repeatedly complain about the volume of the discovery in this case, which, incidentally, is not atypical for a corporate fraud case. Defendants fail to mention (in any of their Motions) that the government has provided a subset of key documents that essentially provide a roadmap of the government's case. In addition to load-ready and searchable documents, the government has provided interview memoranda with relevant documents, key documents tied to the Superseding Indictment, and sets of key/relevant documents. These key materials collectively total 8,126 documents (30,369 pages), or .33% percent of the total discovery provided in this case. In addition, the Superseding Indictment itself actually cites more than 65 emails, giving the defendants a substantial preview of what the government views as statements in furtherance of the charged conspiracies.

In light of the many steps outlined above to give the defendants a roadmap into relevant materials, the volume of discovery does not require a *Santiago* proffer. Moreover, the government is following this Court's "open-file" policy and has thus produced discoverable materials within its possession, custody, or control. Yet, as the government has explained, the materials within the "9 million pages" the defendants repeatedly harp on include materials that are likely of lesser relevance to the preparation of their defense. For example, the government obtained (and produced) full email PST files for several current and Roadrunner employees, which undoubtedly contain irrelevant and unrelated materials. In addition, the government has obtained (and produced) extensive trading and other financial records from analysts that covered Roadrunner stock and firms that owned Roadrunner stock, which, again, are likely not highly relevant to the preparation of the defendants' trial defenses in this case. The government has highlighted the source of the materials in indices accompanying its productions to the defense. Given the discovery and information in their possession, it is inaccurate for the defense to claim that this is a case where they are asked to pull needles from a 9 million page haystack.

Similarly, contrary to the defendants' assertions, nothing about the nature of the charges warrants a *Santiago* proffer in this case. The allegations in this case are that the defendants and their co-conspirators perpetrated a fraud over a four-year period at the company where they worked. Asking the government to provide a full listing of co-conspirator statements is akin to asking the government for nearly every single piece of trial evidence, which is a ridiculous request. Yet, the defendants lived through this fraudulent scheme and cannot colorably claim the operations of the company where they worked for years. Armbruster is the former CFO and Wogsland and Naggs had key financial roles at Roadrunner. The defendants are all certified public accountants. The defendants worked at Roadrunner for years and are undoubtedly familiar with the accounting

and finance terminology, and indeed, the particular accounts at issue in this case. The defendants are alleged to have committed an accounting fraud scheme that, by its very terms required the defendants to conspire with others in finance roles at the Company. Their co-conspirators, as a general matter, were their co-workers at Roadrunner. Thus, the list of co-conspirators is not boundless as the defendants claim. Nor does this case bear any resemblance to one where the defendants are likely to be "surprised by the identity of other co-conspirators." *See United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000).

Finally, as this Court is aware, a trial date in this matter has not yet been set. While a *Santiago* proffer is unnecessary for the reasons set forth above, regardless this Court need not rule on the issue this far out when a trial date has not yet been set. Presumably, the defendants are continuing to review the discovery materials and through such review will perhaps be able to narrow or resolve some of the issues they have raised in their Motion for a *Santiago* Proffer and their Motion for a Bill of Particulars.

## IV. CONCLUSION

With this Motion, the defendants are essentially asking the Court to order the government to provide that information months in advance of any actual deadline, for no legitimate purpose other than the convenience of the defense. That is not a proper basis for a *Santiago* proffer (or a bill of particulars). For the foregoing reasons, the defendants Motion for a *Santiago* Proffer should be denied.

Date:  November 18, 2019

                Respectfully submitted,

                ROBERT ZINK
                Chief, Fraud Section
                U.S. Department of Justice

                By: */s/ Caitlin R. Cottingham*
                HENRY P. VAN DYCK
                Deputy Chief
                CAITLIN R. COTTINGHAM
                Assistant Chief
                Criminal Division, Fraud Section
                U.S. Department of Justice

# CERTIFICATE OF SERVICE

I, Caitlin R. Cottingham, certify that the foregoing has been served on all attorneys of record in the above-captioned case, either via the CM/ECF electronic filing system or via email.

By: <i>/s/ Caitlin R. Cottingham</i><br>
CAITLIN R. COTTINGHAM<br>
Assistant Chief, Fraud Section<br>
U.S. Department of Justice<br>
1400 New York Avenue, NW<br>
Washington, DC 20530<br>
Telephone: (202) 616-5575

Date: November 18, 2019