# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 18-CR-130-LA-NJ |
| ) | |
| v. ) | |
| ) | |
| PETER ARMBRUSTER, ) | |
| MARK WOGSLAND, and ) | |
| BRET NAGGS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPPOSITION BY THE UNITED STATES TO DEFENDANTS' MOTION TO COMPEL**

The United States of America, by and through undersigned counsel, files this Response in Opposition to Defendants' Motion to Compel (hereafter "Motion to Compel"). D.E. 91. The defendants' Motion to Compel asks the Court to compel the government to produce two categories of materials. First, defendants demand "all documents, communications and information obtained by the Government from Roadrunner and its outside counsel or outside accounting/audit firms during the course of Roadrunner's internal investigations." D.E. 91 at 6. Second, defendants demand "any portion of any transcript that contains some or all of the substance of Mr. Wogsland's grand jury testimony, including any portion of any subsequent grand jury transcript of any other witness in which any part of the substance of Mr. Wogsland's grand jury testimony was presented in any form." *Id.* at 6-7. In their Motion to Compel, the defendants complain on the one hand that they have been "inundated" with "a preposterous volume of discovery," D.E. 87 at 17, and, on the other hand, demand that the government produce additional materials to which they are not entitled, and which have nothing to do with preparing this case for trial.

The government has complied fully with its discovery obligations and this Court's "open-file" policy. In addition, the government has gone beyond merely providing discovery to the

defendants, but instead carved out a subset of materials for the defendants to use in preparing for trial, which constitute some of the most relevant documents in the case, and include (1) 93 interview reports and grand jury transcripts with accompanying exhibits of all non-law enforcement witnesses who have testified or been interviewed in connection with the government's investigation; (2) 207 key documents relating to specific counts and allegations in the indictment; (3) 1,676 "notable" documents identified by the government as of particular relevance to the investigation; and (4) 6,156 relevant documents identified by Roadrunner's counsel.

Since its initial production, the government has continued to produce additional load-ready documents to the defendants on a rolling basis, as they become available. Now the defendants are demanding irrelevant materials outside the government's possession, government work product, and grand jury materials not subject to discovery. As the government has explained to the defendants, these requests are without basis in the discovery rules, and in any event, duplicative of materials the defendants have already been provided.

**I.  THE GOVERNMENT HAS ALREADY VOLUNTARILY PRODUCED SUBSTANTIAL DISCOVERY REGARDING THE INTERNAL INVESTIGATION**

In responding to the Defendants' Motion for a Bill of Particulars, the government described in detail the extensive steps it has taken to provide the defendants with comprehensive, well-organized discovery following return of the Indictment and Superseding Indictment. D.E. 100. Rather than repeat that discussion, the government has highlighted certain facts related to the discovery that are directly relevant here.

**A.  The government has already produced "interview downloads" containing facts conveyed to Roadrunner's counsel during the internal investigation.**

In September 2017 and again in 2019, the government produced "interview downloads" to the defendants, which, as the government explained were "notes of summaries of witness

interviews conducted by counsel to Roadrunner in connection with Roadrunner's internal investigation." The government further explained that "these are not the notes of the attorneys who conducted the underlying interviews, but instead notes taken by the government based on conversations with counsel to Roadrunner and thus contain multiple layers of hearsay. In addition, these summaries are not verbatim transcripts of those conversations or of the interviews themselves." As the government explained to counsel for Wogsland in April 2019, the government originally obtained a portion of the downloads in 2017 and, after the Superseding Indictment was returned, undertook the effort of requesting a download of *all* interviews conducted by Roadrunner's counsel in connection with the internal investigation. As the government has repeatedly explained, the government received this information from Roadrunner's counsel orally; Roadrunner's counsel has never produced written interview memoranda or notes to the government.

In August 2019, even after the government obtained the additional interview downloads and provided them in discovery, the defendants contacted the government with a seventeen-point demand letter for information related to the Roadrunner's internal investigation. In this letter, the defendants also demanded, without providing any authority for the request, that the government produce information and materials related to the "interview downloads," including how the government may have used those downloads in its investigation. D.E. 91-1 at 5.

B.  **The defendants demand additional discovery related to Roadrunner's internal investigation.**

In response, the government informed the defendants that much of the information they requested, including information relating to the *underlying interviews conducted by Roadrunner's counsel*, was "not within the possession, custody, or control of the government," and the government thus was "not in a position to produce it." D.E. 91-2 at 1. However, in an effort to be

3

helpful, the government created an index of interview downloads produced based on information it had available, which listed "the name of the interviewee, the interviewing law firm, and the bates range for the produced interview download." *Id.* As the government reiterated in its letter, "[t]he index reflect[ed] that the government ha[d], with one exception noted below, *already produced in discovery the substance of the interview downloads that it has received to date*." *Id.* (emphasis added). Finally, with respect to the defendants' requests "for additional information about how the government used the interview downloads in its investigation, or who was present for the government during the download," the government notified the defendants that it was "not aware of any basis upon which such information would be relevant or discoverable, nor have you articulated one." *Id.* at 2. To date, the defendants have failed to identify any legally cognizable basis for this information, much of which constitutes government work product.[1]

The defendants responded, again demanding that the government produce all categories of materials relating to the Roadrunner's investigation and the "interview downloads." Oddly enough, even though the government prepared the index of interview downloads in direct response to the defendants' request, the defendants asserted that *because* the government created the index, "[i]t is now apparent that the government has previously withheld discoverable information from defendants relating to the 'interview downloads,' among other topics." D.E. 91-3 at 2. Thus, in response to the government providing information the defendants requested (and in direct response to their first request for that information), the defendants accused the government of *withholding* information. The defendants extended this circuitous logic, concluding that because the

---

[1] Under this Court's Local Rules, "'open file materials' do not ordinarily include . . . government attorney work product and opinions" or "rough notes used to construct formal written reports." Criminal L. R. 16(a)(3).

government provided additional information in response to the defendants' requests, the interview downloads the government produced were, necessarily, "facially incomplete." *Id.* at 2-3.

In early October 2019, after the government repeatedly suggested that Roadrunner's counsel would be the more appropriate source for the defendants' request for information about an investigation the government did not conduct or participate in, the defendants sought and were granted leave of this Court to request early returns on Rule 17 subpoenas. The government understands that the defendants thereafter served the three law firms that have represented Roadrunner in connection with the internal investigation and the government investigation with subpoenas for documents.

Shortly thereafter, the government sent a final response to the defendants. In its response, the government reiterated that, notwithstanding the defendants' incorrect assertion that "[p]resumably, the government obtained a wealth of such information" about the internal investigation, much of the information the defendants sought was not in the government's possession. D.E. 91-4 at 2-3. However, the government understood that the defendants had now sought this information directly from Roadrunner's counsel, which the government had been urging the defendants to do for some time. The government also pointed out that the defendants had mischaracterized the government's statements with respect to the "interview downloads:"

> Respectfully, nowhere in our September 20, 2019 letter did we write that the government "*lacks any additional information* about the witness 'interview downloads.'" To the contrary, our letter specifically addressed "[y]our second and third set of requests" which related to the "interview downloads," and then explained the government's position in detail, as well as our conclusion that there was no "basis upon which such information would be relevant or discoverable, nor have you articulated one."

D.E. 91-4 at 2. In addition, in response to the defendants' requests, the government provided "a copy of a privilege log reflecting documents withheld from production to the government that was provided to the government by Company Counsel in September 2019." *Id.* at 3. The defendants

5

declined to offer any additional basis for their demands that the government provide information relating to the Roadrunner's internal investigation or government work product showing if or how any "interview downloads" were used in the government's investigation.[2]

The defendants' Motion to Compel followed on October 18, 2019. As relevant here, the defendants have demanded that the government produce "all documents, communications and information obtained by the Government from Roadrunner and its outside counsel or outside accounting/audit firms during the course of Roadrunner's internal investigations." D.E. 91 at 6. The defendants have further defined this request to include:

> (1) all documents and information shared with the Government related to Roadrunner's witness interviews, including any summaries or representations provided about the interview; (2) all documents and information related to the "download" of information related to that interview; and (3) all materials shared with the Government by Roadrunner or its counsel related to their underlying investigation.

D.E. 91 at 14. As the government understands the Motion to Compel, the defendants claim they are entitled to these irrelevant materials for two reasons. First, the defendants claim, "[t]he requested documents are material to preparing the defense, as they likely contain exculpatory information and Defendants' own compelled statements, may assist impeachment and rebuttal of government witness testimony, and are likely to lead to the discovery of other admissible evidence." *Id.* at 16. Second, the defendants assert that the requested documents are material to the issues raised in their Motion to Dismiss and the defendants "are entitled to probe the extent to which their improperly obtained statements may have tainted other aspects of the government's investigation and resulting indictments." *Id.* at 17.

---

[2] The defendants did respond to the government's letter to request that the government identify by bates number the "documents of interest" identified by Company Counsel. The government provided a spreadsheet of these documents, which had previously been produced to defendants.

### C. The defendants have already obtained the information they seek relating to the Company's investigation from Roadrunner's counsel.

In their Motion to Compel, the defendants acknowledge that "in the days leading up to this filing, Defendants began receiving from various law firms that serve as Roadrunner's outside counsel the 'fact summaries' of their interviews conducted of Roadrunner's employees." D.E. 91 at 8. Yet, the defendants failed to inform the Court that these productions from Roadrunner's counsel, which the defendants have now provided to the government, contain the *very information the defendants seek from the government*. Those materials include: (1) notes and/or factual summaries of witness interviews conducted by Roadrunner's counsel, *i.e.*, the closest documents that exist to firsthand accounts of what individuals said when they were interviewed by Roadrunner's counsel; (2) a list of interviews conducted by Roadrunner's counsel, as well as dates and the names of the attorneys who participated in the interviews; and (3) lists of the dates that Roadrunner's counsel provided the government with factual information it obtained during these interviews. Thus, the defendants have obtained all the information that they have requested relating to the underlying interviews conducted by Roadrunner's counsel, and obtained the information from the correct party. And, of course, the government provided the defendants with the substance of the interview downloads the government received from Roadrunner's counsel months ago. Given that the defendants now have the underlying interview notes, it is unclear what remaining use the "interview downloads" even have as they contain yet another level of hearsay.

In sum, the defendants now have in their possession the following materials: (i) the underlying interview summaries prepared by Roadrunner's counsel; (ii) a complete list of who conducted the underlying interviews; (iii) the "interview downloads" prepared by the government based on factual information provided by Roadrunner's counsel; and (iv) a list explaining when Roadrunner, through counsel, provided factual information obtained in witness interviews to the

government. Yet the defendants have the audacity to allege that they "lack a complete understanding of what substance of the underlying witness interview was conveyed to the Government." D.E. 91 at 6. That allegation is simply false. Rather than acknowledge that they have voluminous information about what was conveyed to Roadrunner's counsel during interviews, the defendants urge this Court to order a baseless fishing expedition into the government's files for work product, internal memoranda, and correspondence with third parties.

    **D.**    **The defendants have repeatedly failed to establish any basis for their requests for additional materials.**

First, the defendants' claim that they need the government's work product about how the government received and used the interview downloads because it "may assist impeachment and rebuttal of government witness testimony." To be clear, as the government repeatedly suggested to the defendants, to the extent they sought information about the underlying witness interviews, which the government did not conduct or attend, that request would best be directed to the law firms that conducted those interviews. Of course, they now have that information. And surely the defendants know that the best record of what a witness actually told Roadrunner's counsel would be the contemporaneous interview memo or interview notes prepared by Roadrunner's counsel, not a document referencing a document prepared by the government based on a factual download from Roadrunner's counsel. How the defendants plan on using documents that have at a minimum four levels of hearsay, and potentially five levels of hearsay, they do not say.[3]

---

[3] The fact that the defendants appear set on using interview memoranda which, as the government understands it, are not verbatim transcripts or statements adopted by any of these witnesses, does not render them admissible. As the government has repeatedly explained to the defendants (not as a basis for withholding information, but rather to be sure the defendants accurately understand what the government was producing), these "interview downloads" contain multiple levels of hearsay and likely pose other evidentiary challenges should the defendants seek to admit them at trial.

8

In sum, should the defendants wish to probe a witness's prior statements for potential inconsistencies, they have all the materials necessary to do so. While the defendants have not told the Court that they received these materials and had them in their possession prior to filing their Motion to Compel, they have now produced them to the government and certainly cannot deny that the underlying interview notes and summaries are the appropriate source for any potential assessment of inconsistent statements. Again, the defendants have not explained how government work product exposing how (or if) the government used information obtained from Roadrunner's counsel could possibly be used as "impeachment" evidence of a witness who was interviewed by Roadrunner's counsel. Nor can the government conceive of any reasonable way in which the defendants could do so.

Second, the defendants' remaining premise for their sweeping demand for the government's files appears to hinge on their legally and factually inaccurate understanding of the independent, parallel investigations conducted by the government and Roadrunner's counsel. As set out in detail in the Government's Opposition to the Defendants' Motion to Dismiss, D.E. 102, the defendants' characterization of the government's investigation is based entirely on inaccurate conjecture and speculation. The government did not direct, control, or coerce the defendants' interviews or Roadrunner's internal investigation. Because the defendants have failed to allege, much less establish, any *Garrity* violation, there is no need for this Court to accept any further evidence on the issue, order discovery, or even determine whether *Kastigar* is an appropriate analysis. D.E. 102 at 29-30. *See United States v. Eliason*, 3 F.3d 1149, 1153 (7th Cir. 1993) ("[T]the defendant overlooks the essential factor necessary to invoke the right to a *Kastigar* hearing: *compulsion.*) (emphasis in original). Moreover, the evidence submitted by the government conclusively establishes that there was no *Garrity* violation and there is no suggestion

that the materials the defendants have requested would in any way change this Court's analysis. The defendants have baselessly alleged that the government compelled and controlled Roadrunner's internal investigation, and now ask this Court to order a fishing expedition into the government's internal files.

The defendants cite *United States v. Bergonzi* in support of their argument, but in that case the court required the government to turn over written reports and interview memoranda that company counsel prepared and produced to the government. 216 F.R.D. 487, 491 (N.D. Cal. 2003). Here, as the government has repeatedly explained to the defendants, the government has already produced the substance of the "interview downloads," which the government received over the phone. Roadrunner's counsel has not produced written interview memoranda or any written report about the internal investigation to the government.

The facts of *S.E.C. v. Vitesse Semiconductor Corp.* are similarly inapposite here. 771 F. Supp. 2d 310 (S.D.N.Y. 2011) (March 25, 2011 opinion); *see also S.E.C. v. Vitesse Semiconductor Corp.*, No. 10 CIV. 9239 JSR, 2011 WL 2899082, at *3 (S.D.N.Y. July 14, 2011). In *Vitesse*, the company hired an outside law firm to conduct an internal investigation and the law firm prepared materials for a presentation to the company's audit committee. These materials, including a written report of the law firm's investigation, were shared with the SEC. 771 F. Supp. 2d at 312. In addition, the company provided "oral summaries" of witness interviews conducted by the law firm. 2011 WL 2899082, at *3. The SEC ultimately filed suit against several of the company's former employees. In connection with the SEC suit, the charged defendants subpoenaed these materials from the company, and the company moved to quash the subpoenas. Thus the issue in *Vitesse* was whether the company waived any applicable privileges in producing these materials to the SEC and therefore had a basis for quashing the subpoenas, not whether the government had

an obligation to produce notes or information about "oral downloads." *Vitesse* in no way stands for the proposition the defendants seek to advance—that the government is required to turn over its investigative files. The case is wholly inapplicable where, as here, the defendants already have both the underlying interview notes/summaries from Roadrunner's counsel, and the substance of what information was provided to the government in the form of "interview downloads." Other than the government's work product, there is simply nothing relevant left to produce.

Finally, the defendants repeatedly assert that the interview downloads the government provided are "facially incomplete" and there are "notable inconsistencies" between the fact summaries provided by Roadrunner's counsel and the interview downloads. Under the defendants' theory, these inconsistencies "further underscore the need for the Government to produce the Subject Discovery." D.E. 91 at 9. Put simply, any inconsistencies between the interview downloads and the interview notes/summaries produced by Roadrunner's counsel reflect what the government has been telling the defendants for months—that is, that Roadrunner's counsel, the individuals who conducted the internal investigation and the underlying interviews, remain the best source for telling the defendants what happened in those interviews and providing any documents. As the government understands it, the defendants now have the underlying interview notes/summaries and thus any purported inconsistency between what Roadrunner's counsel told the government and what Roadrunner's counsel memorialized in the underlying interview notes/summaries is entirely irrelevant. Moreover, as the government has told the defendants since it first produced a set of interview downloads more than a year ago, the interview downloads are "notes of summaries of witness interviews conducted by counsel to Roadrunner in connection with Roadrunner's internal investigation," not "the notes of the attorneys who conducted the underlying interviews, but instead notes taken by the government based on

conversations with counsel to Roadrunner and thus contain multiple layers of hearsay. In addition, these summaries are not verbatim transcripts of those conversations or of the interviews themselves." Yet again, the defendants have articulated no actual legal basis for their request, other than expressing surprise that a document containing four or five levels of hearsay may contain some inconsistencies.

## II. DEFENDANT WOGSLAND IS NOT ENTITLED TO EARLY RELEASE OF GRAND JURY TRANSCRIPTS

In addition, Wogsland asserts that he is entitled to "the specific portions of any [grand jury] transcripts that contain his own statements." D.E. 91 at 19. The facts relevant to this claim are as follows:

First, Wogsland and five other Roadrunner employees testified before the grand jury. In September 2018, the government produced transcripts of grand jury testimony of six current and former Roadrunner employees, which, as the government explained to the defendants were "the only non-law enforcement witnesses who testified before the grand jury in this case." While not all of these materials were discoverable at that early date under the District's "open-file" policy, *see* Criminal L. R. 16(a)(4), the government nevertheless produced these transcripts and interview memoranda created by law enforcement in connection with the government's investigation quickly and in an organized fashion, including with accompanying exhibits, to make them accessible to the defendants.

Second, in July 2019, ten months after receiving the transcript of his client's grand jury transcript, counsel for Wogsland demanded that the government produce copies of transcripts from any other grand jury proceedings in which Wogsland's grand jury testimony "was presented to any other grand jury sitting in any district." D.E. 91-10 at 6. The government notified counsel

that it would not be producing the requested materials, as there was no basis for his request under either the local or federal rules.

In this Motion to Compel, Wogsland assumes that grand jury transcripts containing his statements must exist because he "reasonably believes" it to be so and therefore contends he is entitled to their disclosure under Rule 16. Yet again, Wogsland urges this Court to adopt a legal standard that is without precedent or support and would effectively broaden Rule 16 to apply to nearly all grand jury transcripts and government work product. In short, accepting Wogsland's argument would mean that anytime a grand jury was presented with an email or other document authored by a defendant, any portion of the grand jury transcript relating to that email would become immediately discoverable under Rule 16(B)(i). That is not the law.

### A. Legal Standard

This Court's Local Rules define the "open file policy" to include "disclosure without defense motion of all information and materials listed in Fed. R. Crim. P. 16(a)(1)(A), (B), (C), (D), and (F); upon defense request, material listed in Fed. R. Crim. P. 16(a)(1)(E); material disclosable under 18 U.S.C. § 3500, *other than grand jury transcripts*." Criminal L. R. 16(a)(2). Local Rule 16 further provides that "open file" does not ordinarily include "transcripts of the grand jury testimony of witnesses who will be called in the government's case-in-chief," unless they contain exculpatory material. Criminal L. R. 16(a)(3). Thus, consistent with the local rules, "[g]rand jury transcripts of any and all witnesses the government intends to call at trial" are not required to be produced shortly after arraignment, but rather "will be made available to the defense no later than 1 business day before the commencement of the trial." Criminal L. R. 16(a)(4).

Federal Rule of 16(a)(1)(B) applies to a defendant's written or recorded statements and provides that "the government must disclose to the defendant" the following:

**(i)** any relevant written or recorded statement by the defendant if:

13

> • the statement is within the government's possession, custody, or control; and
> • the attorney for the government knows--or through due diligence could know--that the statement exists;
>
> **(ii)** the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
>
> **(iii)** the defendant's recorded testimony before a grand jury relating to the charged offense.

Fed. Rule Crim. P. 16(a)(1)(B).

Outside of Rule 16(a)(1)(B), "[w]here a defendant seeks disclosure of grand jury transcripts, Fed. R. Crim. P. 6(e) comes into play, and "[r]ule 6(e)(3) provides that grand jury proceedings, including transcripts, are subject to a general rule of secrecy, and may not ordinarily be disclosed." *United States v. Hayes*, 376 F. Supp. 2d 736, 739 (E.D. Mich. 2005). Thus, "[t]o obtain grand jury material, despite the presumptive secrecy imposed by [Rule 6], a litigant must show that the information is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed." *United States v. Campbell*, 324 F.3d 497, 498–99 (7th Cir. 2003) (internal quotation marks omitted). Courts have uniformly required that a defendant show a "compelling necessity" for the materials, which "is shown by demonstrating a "particularized need" for the disclosure. *Hayes*, 376 F. Supp. 2d at 739; *see also Tolliver v. United States*, No. 07-CV-525-JPG, 2008 WL 5057302, at *2 (S.D. Ill. Nov. 21, 2008) ("[T]he secrecy of the grand jury proceeding will not be broken except where the party seeking disclosure can show a compelling necessity or a particularized need."). In short, "the Court is not permitted to engage itself or to permit the defendant to engage in a fishing expedition into the minutes of the grand jury." *United States v. Kilroy*, 523 F. Supp. 206, 214 (E.D. Wis. 1981).

### B. There is no legal basis for "early" disclosure of grand jury materials.

As an initial matter, the defendants impugn the government for only "tacitly acknowledging" that grand jury transcripts of the indictment and superseding indictment presentments exist. D.E. 91 at 3, 11 ("the Government did not deny that such transcripts exist"); 21 ("The government has implicitly acknowledged that subsequent grand juries were convened in this District (and perhaps elsewhere)."). To the extent there is any confusion remaining on the part of the defendants, of course the case was presented to a grand jury in this District, the body legally required to return an indictment and, consistent with Rule 6 and well-established practice, a court reporter was present for those proceedings. *See* Fed. R. Crim. P. 6. The existence of such transcripts, however, in no way renders them discoverable, despite the defendants' tortured arguments to the contrary.

Here, the transcripts Wogsland seeks clearly fall outside the gambit of Rule 16. The Seventh Circuit has rejected the argument that mere reference to, or even recitation of a defendant's statements in a document or testimony renders that document or testimony discoverable under Rule 16. *See United States v. Callahan*, 534 F.2d 763, 765 (7th Cir. 1976). In *Callahan*, which defendants do not cite, the issue before the Court was whether the government was required, under Rule 16, to disclose the transcripts of oral testimony of several witnesses who testified before the grand jury that contained "inculpatory oral statements by the Defendants and heard by the witnesses." *Id.* at 764. The Seventh Circuit concluded that "the inescapable conclusion is that the delineated portions of the transcribed Grand Jury testimony" were statements of the other witnesses "and not 'statements of defendants' within the purview of Rule 16." *Id.* at 765. Following this precedent, "[t]he law in the Seventh Circuit is clear that a government witness's written or recorded statement that recounts a defendant's prior oral statement is not a defendant's written or recorded statement under Rule 16(a)(1)" and is, "instead, "a statement of a prospective

15

government witness under the Jencks Act subject to mandatory disclosure only after the witness has testified." *United States v. Lakin*, No. 307-CR-30068-JPG-1, 2007 WL 2479331, at *2 (S.D. Ill. Aug. 28, 2007); *see also United States v. Zarattini*, 552 F.2d 753, 757 (7th Cir. 1977) (rejecting request under Rule 16 for defendant to "discover the substance of his statements to his brother as related to the grand jury"). The same analysis applies with equal force here where the defendant's statements at issue were made to the grand jury. The government does not dispute that Wogsland is entitled to his own testimony, which the government has produced. Even if some portion of that testimony were incorporated into the testimony of another witness, it would be a statement of that witness, not of Wogsland.

Instead of citing the relevant Seventh Circuit law which forecloses his argument, Wogsland instead cites one out-of-circuit case from the District of Maine, which held that under Rule 16(a)(1)(B)(ii), the government needed to turn over law enforcement notes of an interrogation of a defendant even where the substance of the notes was contained in memoranda prepared by law enforcement. *United States v. MST Mineralien Schiffarht Spedition und Transp. GmbH*, No. 2:17-CR-00117-NT, 2017 WL 5585718, at *3 (D. Me. Nov. 19, 2017). Even if the analysis of disclosure of agents notes were applicable to the present context involving grand jury testimony—and it is clearly not—that is not the law in the Seventh Circuit. The Seventh Circuit has squarely held that "the government satisfies the requirements of Rule 16 if it turns over a written report that contains all of the information found in an agent's original notes but does not deliver the notes themselves to the defendant." *United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000). This Court has followed that guidance, observing "Bautista is clearly not entitled to many of the disclosures he requests. For example, as to Bautista's request for agent notes, it is well established that the government need only disclose a written report that contains all of the information found in an

agent's original notes." *United States v. Bautista*, No. 05-CR-232, 2005 WL 3560679, at *3 (E.D. Wis. Dec. 28, 2005)

As a fallback argument, Wogsland rehashes the arguments from the defendants' Motion to Dismiss and vaguely asserts that the government engaged in "argumentative" questioning during his grand jury testimony and other purported misconduct relating to Roadrunner's internal investigation. D.E 91 at 21. Wogsland proceeds to argue, without support, that this alleged misconduct somehow entitles him to disclosure of grand jury transcripts in order "to discover which of his statements the government relied upon in later grand jury proceedings that resulted in his indictment and, equally importantly, what testimony the government *omitted*." D.E 91 at 21.[4] Simply put, Wogsland has not cited any authority for the proposition that a defendant who was confronted in the grand jury in a manner he did not like is entitled to additional grand jury material. Nor is the government aware of any. Rather than even attempting to make a particularized showing required for disclosure of grand jury materials, Wogsland's "request appears to be a general fishing expedition into the grand jury proceedings." *United States v. Balogun*, 971 F. Supp. 1215, 1232 (N.D. Ill. 1997). Because Wogsland has "neither shown nor attempted to show that the requested disclosures are necessary to avoid possible injustice, or that their need for disclosure is greater than the need for continued secrecy," his request should be denied. *Id.*

---

[4] Wogsland has not claimed that anything in his grand jury testimony was actually exculpatory or why he would be entitled to know what portions of his testimony the government ultimately relied upon or omitted. Even if he had alleged there was something exculpatory in his grand jury testimony, "the Government is not required to submit exculpatory evidence to grand jury." *United States v. Gardner*, 860 F.2d 1391, 1395 (7th Cir. 1988).

17

### III. CONCLUSION

The defendants have not identified any articulable basis in law or fact for the materials they seek in their Motion to Compel, and their requests are solely for the government's work product, and other materials not subject to Rule 16 or any disclosure requirements. Moreover, the defendants have already received more than sufficient materials to satisfy their purported need for them directly from the party that had them in the first place, rendering their requests in this Motion to Compel entirely moot. For all of these reasons, the defendants' Motion to Compel should be denied.

Date: November 18, 2019

Respectfully submitted,

ROBERT ZINK
Chief, Fraud Section
U.S. Department of Justice

By: */s/ Caitlin R. Cottingham*
HENRY P. VAN DYCK
Deputy Chief
CAITLIN R. COTTINGHAM
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

# CERTIFICATE OF SERVICE

I, Caitlin R. Cottingham, certify that the foregoing has been served on all attorneys of record in the above-captioned case, either via the CM/ECF electronic filing system or via email.

By: */s/ Caitlin R. Cottingham*
CAITLIN R. COTTINGHAM
Assistant Chief, Fraud Section
U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Telephone: (202) 616-5575

Date: November 18, 2019