UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               Case No. 18-CR-130

BRET NAGGS, MARK WOGSLAND,
and PETER ARMBRUSTER,

    Defendants.

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION
## FOR *SANTIAGO* PROFFER FROM GOVERNMENT

The Seventh Circuit's "preferable procedure"—which has been adopted by all other districts in this circuit—is to require the government to make a pretrial *Santiago* proffer. And yet, in response to Defendants' request that this procedure be followed in a case that is undeniably atypical for this district, the government argues that a proffer would be simultaneously unnecessary and unfair.

Defendants have already acknowledged that this district's normal practice is not to require a pretrial proffer. However, nothing in the government's response refutes Defendants' showing that a proffer is uniquely necessary here to: (1) allow Defendants to adequately prepare a defense and focus litigation positions; and (2) minimize the risk of an extremely costly mistrial. These are legitimate purposes justifying a deviation from the district's normal practice.

I.  ARGUMENT

   A.  **A *Santigo* proffer is necessary to allow Defendants to adequately prepare a defense and focus litigation positions.**

The government does not dispute that requiring a *Santiago* proffer in this case would be consistent with Seventh Circuit case law and the practice of all other district courts in this circuit. *See United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (explaining that a *Santiago* proffer is the Court's "preferable procedure"). Nor does the government deny that this Court has indicated that, under certain circumstances—including where there are concerns about the complexity of the case and the defense's ability to focus its litigation position—a deviation from this district's normal practice may be warranted. *See United States v. Arms*, No. 14-CR-78, 2015 WL 5022640, at *9-10 (E.D. Wis. Aug. 24, 2015) (Adelman, J.).

Instead, the government resists a *Santiago* proffer for two, seemingly conflicting reasons: (1) the government has already provided "a substantial preview" of co-conspirator names and statements, implying that a proffer is unnecessary; and (2) providing co-conspirator names and statements would be an "unwarranted preview" of the government's case, implying that a proffer is unfair. Gov't Br. at 7. Neither contention has merit.

First, the government claims that a *Santiago* proffer is unnecessary because, through its "detailed, well-organized, and comprehensive discovery" and compliance with this district's "open-file" policy, it has already provided Defendants with a "roadmap" of its case. *Id.* at 7-8. The government also mentions that Defendants "lived through this fraudulent scheme" and thus apparently should already know the

identities of their co-conspirators and their statements. *Id.* at 8-9. This begs the question why the government is refusing to produce a list that, according to the government itself, would be relatively easy for Defendants to compile on their own.

Relatedly, the government implies that a *Santiago* proffer would be redundant because the government has already narrowed the discovery to 30,000 pages of "key materials." Gov't Br. at 7. But this assertion is directly contrary to the government's later complaint that requiring a proffer here is a "ridiculous request" because it would be "akin to asking the government for nearly every single piece of trial evidence." *Id.* at 8.

The government's positions precisely make Defendants' point: if identifying all co-conspirators and co-conspirator statements would be a "ridiculous request" for the government in this case, it would be an impossible task for the defense.

Without a *Santiago* proffer, Defendants have no way of knowing whether a single email in the approximately 9 million pages of discovery—and not in the 30,000 pages of "key materials" (which do not include a subset of co-conspirator statements)—may be an alleged co-conspirator statement from someone who was not interviewed at all and who had no actual email conversations with the defendant against whom the statement is offered; or whether any statement made by any of the 90 or more witnesses whose statements have been disclosed is an alleged co-conspirator statement. Until the government identifies these statements, Defendants cannot possibly know whether they will need to challenge their admissibility under Rule 801(d)(2)(E)—whether individually or as a group.

3

Second, the government seeks to cast Defendants' request as unfair, labeling it as "yet another attempt to gain access to the government's trial strategy." Gov't Br. at 7. To repeat, every other district in this circuit uses *Santiago* proffers, which the Seventh Circuit has described as a "preferable procedure." *See Cox*, 923 F.2d at 526. As a result, these courts have necessarily found that proffers are not an "unwarranted" advantage for defendants. *See United States v. DeKelaita*, 875 F.3d 855, 859 (7th Cir. 2017), *reh'g denied* (Jan. 25, 2018), (explaining that the purpose of a *Santiago* proffer is simply "to facilitate the admissibility of co-conspirator evidence"). The government points to no case law—in this district or otherwise—for its proposition.

Relatedly, the government implies that there is something illegitimate about Defendants' request. Gov't Br. at 9. Not so. Indeed, the Seventh Circuit has endorsed the use of *Santiago* proffers where, as here, conspiracy evidence is "voluminous." *See United States v. Andrus*, 775 F.2d 825, 837 (7th Cir. 1985). In addition to concerns regarding Defendants' ability to prepare for the introduction of voluminous co-conspirator evidence at trial, a proffer is also justified to alleviate very real concerns regarding a mistrial, as explained below.

### B. A *Santigo* proffer is necessary to minimize the risk of an extremely costly mistrial.

The Seventh Circuit has expressed concern over trial courts' decisions to conditionally admit co-conspirator statements without a proffer, noting in one case that "the course followed below could have been hazardous," and could have resulted in a "costly mistrial." *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir. 1987).

Accordingly, the Court has explained that it would prefer a trial court to not take "on faith" the government's assertions regarding co-conspirator statements, but rather require a proffer by the government. *Id.*

Here, the government does not dispute that a trial in this case will span weeks if not months, or that, as a result, conditionally admitting co-conspirator statements without a proffer could lead to an extremely costly mistrial. Simply put, the government should not be able to put before a jury co-conspirator statements allegedly regarding <u>four</u> very complex conspiracies spanning <u>four</u> years without any proffer establishing that the speakers were in fact co-conspirators, and establishing that such statements were made in furtherance of the conspiracy.

Indeed, the government does not even respond to Defendants' argument that the possibility of mistrial and prejudice to Defendants is especially likely here. Given the complexity of many of the accounting decisions at issue, the wide organizational structure of Roadrunner, the undisclosed number of unidentified co-conspirators, and the total number of accounting decisions made by Roadrunner and its subsidiaries between 2013 and January 2017 (especially those not specifically identified in the Superseding Indictment), there is an especially high likelihood that jurors would be prejudiced by the introduction of statements that may be later stricken, such that no limiting instruction would be able to cure, and a mistrial would need to be declared.

In sum, the most efficient way to proceed in this case would be for the government to provide a *Santiago* proffer. Doing so would eliminate the risk of an extremely costly mistrial. This unique situation is due to the nature and enormity of

the allegations and discovery, and thus will not "open the floodgates" for *Santiago* motions.

## II. CONCLUSION

Defendants acknowledge that a *Santiago* request is usually made within the timeframe for motions in limine. However, for all of the reasons set forth above, including the enormous volume of discovery in this case, a *Santiago* proffer shortly before trial would very likely necessitate a continuance. As a result, to reduce the likelihood of a trial continuance, Defendants have moved for a proffer now, in the timeframe for pretrial motions.

Accordingly, Defendants respectfully request that this Court order the government to file a *Santiago* proffer within 60 days. In the alternative, this Court should order the government to file a *Santiago* proffer at least six months before trial.

Respectfully submitted this 18th day of December, 2019.

/s/ *Michelle L. Jacobs*
Michelle L. Jacobs, SBN 1021706
Steven M. Biskupic, SBN 1018217
Vanessa K. Eisenmann, SBN 1084012
Biskupic & Jacobs, S.C.
1045 W. Glen Oaks Lane, Suite 106
Mequon, WI 53092
Telephone: (262) 241-0033
Fax: (866) 700-7640
E-mail: mjacobs@biskupicjacobs.com

*Attorneys for Defendant Bret Naggs*
