**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
　　　　**Plaintiff,**

　　v.　　　　　　　　　　　　　　　　　　Case No. 18-CR-130

**PETER ARMBRUSTER, MARK WOGSLAND,**
**and BRET NAGGS**
　　　　**Defendants.**

---

**DECISION AND ORDER**

The government charged the defendants, former officers of a publicly traded company called Roadrunner Transportation Systems, with securities and wire fraud offenses. The government alleges that the defendants defrauded Roadrunner's shareholders, lenders, and the investing public by making or causing others to make false statements about the company's financial condition.

The defendants moved to dismiss the indictment, or in the alternative for a Kastigar hearing,[1] arguing that they were compelled to make incriminating statements as part of the company's internal investigation. See Garrity v. New Jersey, 385 U.S. 493 (1967) (holding that threat of job loss may constitute compulsion for Fifth Amendment purposes); United States v. Stein, 541 F.3d 130, 152 (2d Cir. 2008) (holding that the Garrity rule applies to private conduct

---

[1]See Kastigar v. United States, 406 U.S. 441, 461-62 (1972) (holding that a defendant raising a claim under the federal immunity statute must show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources). A defendant may also be entitled to a Kastigar hearing when he provides evidence that is "compelled." See United States v. Eliason, 3 F.3d 1149, 1152 (7th Cir. 1993).

where the actions of a private employer in obtaining statements are "fairly attributable to the government"). The magistrate judge handling pre-trial proceedings in this case recommended the motions be denied. The defendants object to the recommendation. See Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."). The magistrate judge's recommendation includes a detailed description of the operative facts, which I need not repeat here. (R. 135 at 2-10.)

The magistrate judge concluded that defendant Naggs lacked standing, as he conceded his statements were not compelled by threat of job loss, instead arguing that the investigation into his activities was impermissibly tainted by the improper manner in which the government investigated others. (R. 135 at 11-13.) The magistrate judge found that defendants Wogsland and Armbruster were not compelled based on a provision in the company handbook that employees "must participate to the fullest extent possible in internal investigations when requested. . . . Failure to fully participate in an internal investigation will result in discipline up to and including termination." (R. 135 at 15.) Wogsland declared that he believed failure to sit for an interview and testify in front of the grand jury would have resulted in his termination. (R. 135 at 15.) However, the magistrate judge noted that, unlike the situation in Garrity, where the officers were told they would be fired for failure to answer, no one threatened Wogsland with termination if he failed to cooperate; rather, the consequences for refusing to answer in this case were non-specific and speculative. (R. 135 at 16-18.) Armbruster's claim was even weaker, the magistrate judge concluded, as the record contained no evidence that he had even a subjective belief that he would be fired if he failed to sit for an interview. (R. 135 at 21-22.) The magistrate judge also rejected the defendants' prosecutorial misconduct argument, finding no evidence that the government improperly used interviews from Roadrunnner's internal

2

investigation to obtain the indictment. (R. 135 at 22.) Nor, the magistrate judge concluded, did the defendants demonstrate that the government engaged in improper or abusive conduct in questioning Wogsland in front of the grand jury. (R. 135 at 23.) Finally, because the defendants failed to establish that any of their statements were compelled, the magistrate judge saw no basis for a Kastigar hearing. (R. 135 at 24.)

Wogsland has filed substantive objections to the recommendation (R. 139), which the other defendants summarily joined (R. 146, 147). As the magistrate judge noted, the defendants are not similarly situated. Naggs makes no independent argument on the standing issue. (R. 147, 165.) His motion may be denied on this basis alone. See United States v. O'Neill, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998) (noting that Rule 59(b) requires specific written objections; generalized objections, absent specific legal authority, do not suffice). Similarly, Armbruster mounts no independent challenge to the magistrate judge's finding that he lacked a subjective belief he would be fired for non-participation. Accordingly, his motion fails even under the test defendants advocate. In any event, even if the defendants were similarly situated, I agree with the magistrate judge's conclusion that their statements were not compelled. For simplicity, I will refer to the "defendants' arguments" in addressing the objections.

The defendants contend that the magistrate judge incorrectly required an explicit threat, when compulsion should be assessed based on the totality of the circumstances. (R. 139 at 6.) They assert that the government relied on a now-familiar strategy of pressuring a public company to compel employees to provide statements under threat of termination, and then to provide those statements to the government for use in its investigation, in the hope of earning cooperation credit. (R. 139 at 6-7.) Making matters worse, Wogsland was then directed to

3

testify in front of the grand jury, represented by company counsel operating under a conflict of interest. (R. 139 at 7-8.) Wogsland was never told by Roadrunner or its lawyers that his participation was optional, and he subjectively believed he would be terminated for non-compliance. (R. 139 at 9-11.) The defendants further argue that their compelled statements (and those of other employees) improperly formed the foundation of the government's investigation and indictments in this matter. (R. 139 at 12.) The defendants' arguments are unpersuasive.

The defendants principally argue that the magistrate judge improperly required an explicit threat of termination. (R. 139 at 18.) They contend that, by framing the question too narrowly, the magistrate judge failed to recognize that compulsion may be express or by implication. (R. 139 at 19, citing Minnesota v. Murphy, 465 U.S. 420, 435 (1984).) The defendants contend that the correct test is whether the employee subjectively believed the statements were compelled by threat of termination, and whether that belief was objectively reasonable under the totality of the circumstances. (R. 139 at 20, collecting cases.) The defendants recognize that the Seventh Circuit has not squarely addressed the issue, relying instead on a concurring opinion in United States v. Swanson, 635 F.3d 995, 1006-07 (7th Cir. 2011) (Manion, J., concurring). (R. 139 at 20-21.) The defendants argue that their case presents a rare set of circumstances establishing compulsion absent an explicit threat. (R. 139 at 23.)

While the defendants assert two lines of authority on this issue, courts have noted that the explicit threat and subjective/objective tests "are functionally equivalent." United States v. Bartlett, No. 06-CR-273, 2007 WL 1830726, at *8 (E.D. Wis. June 22, 2007) (citing State v. Brockdorf, 291 Wis. 2d 635, 666 (2006)). Under either test, the defendant must show that the

4

threat was sufficiently specific and certain. See United States v. Palmquist, 712 F.3d 640, 645 (1st Cir. 2013) ("Garrity immunity is contingent upon the degree of certainty that an employee's silence alone will subject the employee to severe employment sanctions."); United States v. Cranley, 350 F.3d 617, 622 (7th Cir. 2003) ("[T]he Court in Murphy held that the lesser price that consists of a merely plausible fear that invoking one's Fifth Amendment privilege will get one into trouble . . . is not a heavy enough penalty to excuse the failure to assert the privilege."); United States v. Corbin, 998 F.2d 1377, 1390 (7th Cir. 1993) ("The fact that a defendant is expected to give candid answers in a particular situation and might suffer adverse consequences if he does not . . . is not enough to excuse him from affirmatively invoking his fifth amendment privilege if he does not wish to incriminate himself."); United States v. Vorley, No. 18 CR 35, 2020 U.S. Dist LEXIS 41983, at *27 (N.D. Ill. Mar. 11, 2020) ("Garrity—in which the penalty for invoking the privilege was certain—simply does not address situations, like this one, in which there is a less-than-certain risk of a substantial adverse consequence to invoking the Fifth Amendment privilege."). In any event, the defendants' contention that the magistrate judge failed to apply their preferred test is refuted by the next section of their own objections, in which they state that the R&R accepted that Wogsland had a subjective belief that his refusal to testify would result in his termination but then erred in analyzing the objective reasonableness prong. (R. 139 at 24.)

As the magistrate judge noted, there is no evidence in the record that anyone ever threatened the defendants with job loss if they did not answer questions.[2] Wogsland contends

---

[2] In his objections and reply, Wogland attacks the evidence submitted by the government on this issue. (R. 139 at 25; R. 155 at 20-21.) But it is not the government's burden to disprove compulsion. Wogsland points to no evidence in the record that anyone from the company, its outside law firms, or the government ever suggested to him that he could be fired

5

that he was never told by the company or its lawyer that speaking was optional. (R. 139 at 29.) But the Fifth Amendment does not require such warnings in this context. See Murphy, 465 U.S. at 427 (holding that "the general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones. In that respect, Murphy was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination").

Lacking evidence that anyone personally threatened them with job loss, the defendants argue that the employee handbook constitutes an express threat of termination. (R. 139 at 25-26.) The handbook mentions termination as a possible sanction for failure to participate in an internal investigation, but nothing in the handbook suggests that the defendants would be terminated for invoking their Fifth Amendment privilege or otherwise refusing to answer particular questions. See United States v. Huang, No. 12-1246 WJ , 2014 WL 12789662, at *8 (D.N.M. July 9, 2014) (finding that handbook containing similar language did not suggest that termination would be automatic or mandatory if the defendant refused to show up for or if he had declined to make statements during the inquiry). As the Supreme Court stated in Murphy, "The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony." 465 U.S. at 435; see also Vorley, 2020 U.S. Dist LEXIS 41983, at *31-32 ("Compulsion, under the constitutional privilege, requires an objectively reasonable fear that a potent sanction will be

---

if he refused to speak.

6

imposed for failing to speak.").³  The defendants' awareness that other employees had been fired for unspecified violations of the handbook does not make objectively reasonable their belief that termination would result from failure to answer specific questions during the interviews at issue.

The defendants further argue that Wogsland was required to testify in front of the grand jury with conflicted counsel, who failed to advise him he could refuse, further supporting a finding of unconstitutional compulsion.  (R. 139 at 28-29.)  But it is undisputed that the government properly advised Wogsland of his rights, including his Fifth Amendment privilege, before he testified.  (R. 135 at 21; R. 153 at 24.)  Wogsland fails to show that any conflict by the Greenberg Traurig lawyers resulted in compulsion.  In reply, Wogsland faults the government for failing to take action to remedy the conflict, but he cites no Supreme Court or Seventh Circuit authority requiring the government to do so.  See In re Klein, 776 F.2d 628, 633 (7ᵗʰ Cir. 1985) ("The suspect has no right to counsel before the grand jury.").

Finally, the defendants challenge the magistrate judge's rejection of their prosecutorial misconduct argument.  (R. 139 at 32.)  To the extent this argument rehashes the Garrity challenge, it fails, for the reasons stated.  The defendants accuse the government of abusive questioning of Wogsland, but even assuming that is true, the only authority they cite for dismissal is 1980 district court decision.  (R. 139 at 34.)  The Supreme Court has more recently held that the supervisory power to dismiss an indictment because of misconduct before the grand jury is limited to a violation of one of those few, clear rules approved by the Court and

---

³In reply, Wogsland argues that refusing to answer certain questions would have been incompatible with "full participation."  (R. 155 at 22.)  While that may have been his subjective belief, he presents no objective evidence in support.

7

by Congress to ensure the integrity of the grand jury's functions; that power may not be used to prescribe standards of prosecutorial conduct. United States v. Williams, 504 U.S. 36, 46-47 (1992). The defendants also fail to show that any improper questioning substantially influenced the grand jury's decision to indict. See Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988).

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 135) is adopted, and the defendants motions to dismiss (R. 82, 87, 90) are denied.

Dated at Milwaukee, Wisconsin, this 9th day of June, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge